If I could reserve five minutes for rebuttal. All right. Thank you. Keep your eye on the clock, please. I'll try to remind you as well. Thank you, Your Honor. May it please the Court. With Section 542, Congress has directed the Department of Justice not to prosecute when doing so would interfere with Washington's implementation of its own laws authorizing medical marijuana. This prosecution violates that directive because here local officials already applied Washington's unique authorizing framework to this particular case and in doing so concluded that no prosecution was warranted and left plants behind for continued cultivation and use. That gave practical effect to Washington's laws. And that was before the federal government intervened and commenced this prosecution, that is, thwarting the intended effect of Washington's framework in violation of Section 542. Now, the government in this case has ignored all of these key aspects of this particular case. Instead, the government rests its argument entirely on a single admission of my client that under federal law, he conspired to manufacture and distribute over 100 marijuana plants during a two-year period. That is the admission. But the problem is there's no explanation from the government why that is relevant under state law or how that demonstrates a state law violation. And, in fact, there's not a... I assume the explanation was that 100 is too big a number for compliance with Washington state law. And that's not true, Your Honor. So the way the Washington scheme is set up is that the limits are applicable at any given time. And you could have had no more than 45 at different points in time in the two-year period. Well, that's if you have a collective situation. And still get a collect... using the 45 number because it was the collective situation at the time. In theory, you could have had more than 100 different plants over the couple-year period, but not at any point in time more than 45. Is that what you're saying? No. Oh, okay. The first part, yes. The first part, yes. At any time, you could have a certain number, and then those could aggregate over time. But here we have a unique framework in Washington in how it authorizes the cultivation and use of marijuana for medical purposes. But, you know, counting the plants is one thing. But isn't there a logical explanation here that the district judge found the activity was not protected based on the reference, it's ER-19, to the results of the search warrant that showed sales to non-qualified people and a distribution type of activity contrary to law? Other than in passing, you don't really challenge the findings the court made. And I would think you'd agree if there's activity outside the statutory scheme, then this protection, safe harbor, call it what you will, wouldn't apply. So isn't that where the district judge found the bases to deny the motion? So I want to answer that. I want to flag real quick that with the collective provisions, they don't apply unless they're knowingly violated, and that's the key there. But to answer your question, Your Honor, the judge did not make findings. The judge in passing said that the government had made a suggestion based on certain records. Those records were before the local officials, and they looked at them. They had determined the prosecution wasn't warranted. The reason is Washington's scheme authorizes noncommercial production and delivery. That can include sales. There was nothing in here that was expressly inconsistent with what Washington authorized. In determining whether he was compliant with state law, don't we look to also the factual basis that is laid out in the plea agreement? Yes. And now I would say, again, the government has not pointed to any of this. So the government is focusing on this one particular statement. But, yes, we would say we're admitting to the facts in that plea agreement, but those facts don't demonstrate a violation of Washington State medical marijuana laws. Well, I mean, you've now raised the issue of knowing and knowingly. Yes. Knowingly usually doesn't require knowledge of law or illegality. It requires knowledge of underlying facts. And that's true under Washington statute as well. There are a few narrow exceptions that have been created, but no such exception appears to have been created and recognized yet for this statute. So I'm not sure that you can say with some confidence that he may have had too many plants, but he didn't know what the numerical limitation was, demonstrates that he was in full compliance with Washington State law. Subsequent to the start of this case, our court issued its McIntosh decision, which wound up remanding the case to district court for an evidentiary hearing to address that question. Is there a reason we shouldn't do that here? Yes, Your Honor. So to start with the knowingly issue and what it means in this particular scheme, yes, normally knowingly would mean knowledge of what you're doing rather than the law. That is true in Washington's criminal code, I think is what you're referring to. Here we have a distinct scheme where that term is not defined and our confidence in what it means comes from the way that Washington courts have interpreted the scheme and also the express indications it is intended to be interpreted leniently. And so liberata is a good case on this issue from the U.S. Supreme Court where the court recognized knowingly is an ambiguous term, and so you have to look to indicators for what it means. We have the definition in the other separate context. In this context, the indicators are that it's an intentionally lenient scheme. There's evidence that the legislature was aware of confusion and lack of awareness of the details of these laws. That's why this provision is in here. It's in here because they knew people would be engaging in this without realizing that they might be violating a particular limit that applies, again, only if they know about it. The leniency doesn't extend to sales situation, correct? No, it does, as long as the sales are not a commercial enterprise. You're authorized as a qualified patient to grow a certain number of plants, and in doing that, you are then authorized to engage in noncommercial delivery and the like. If there's indications of commercial sales, then that would take you outside of the state's statute. If it was a commercial enterprise, I would say yes. I would say look at SHOOP, for example, Your Honor. State versus SHOOP is a great case to look to to see how the state has been interpreting its laws in these kinds of situations and the kinds of activities that are allowed. SHOOP involved a person who was a designated provider for over 1,000 people, and there were sales involved in that case. That didn't matter. But all 1,000 were qualified individuals in terms of use. Yes. And that seems to be different, at least in the references made by the district judge here or the proffer by the government at the time of the motion, right? Well, that issue was never developed, and there's no dispute as to it. It just hasn't been raised. And the local officials here made a determination that after seeing these records, these people are in compliance with the framework of the law. There's this other provision that applies if they knew about it, but we don't think they know about it, so we're going to take the excess. And Washington's framework, if you go through step by step, each step of this process is laid out in this framework. It was followed and applied here as it was intended to be applied. That's the implementation of the law. What about this kind of reverse preemption or complete deference to the state officials? They pass the government. The feds stay away. I would say this is a case of reverse preemption. It's a very unique circumstance. Now, McIntosh, to get to that, because, Your Honor, you raised the McIntosh issue. McIntosh was a situation where the only argument was because the state has passed this big, complex framework, all activity in the state is now immune. So it was this sort of field preemption argument, right? Hey, the state passed these laws. Everything's off limits now. That's what was rejected in McIntosh. It was a very narrow argument. It was only about a very limited type of authorization, just in general the fact that activities were authorized, and then a very narrow type of implementation, the fact that these laws were passed. So in that context, McIntosh says you've got to show you're in compliance with, A, it's got to be limited to the laws that are authorizing conduct. B, you've got to show you're actually following them. This is very different. Well, I'm not so sure that the record tells it's very different. I mean, we have Judge Rice's order, which is all pre-McIntosh, which at least contains the seed of maybe there's a sale outside the permitted group. How can we say on the record that we can be confident that full compliance with Washington law has been established? I don't quarrel with what you say in terms of looking to the local statute or the State statute. We don't know that, do we? Well, we don't just look to the State statute. We also look to the unique form of implementation at issue here, the distinct form of implementation. Well, something that's troubled me about this, suppose you've got a local prosecutor who just decides, you know, I'm not going to enforce any of this. I really don't care about marijuana or the bigger fish to fry and so forth. So exercises prosecutorial discretion simply not to enforce the law. Is the reverse preemption so great as to preclude the Department of Justice from saying, now, wait a minute, that's well in excess of what Washington law permits. We have to accede to the local prosecutor's prosecutorial discretion? I don't think so. That's DOJ's position. So how would we resolve that? Well, one, I would say I think Section 542 is that broad and would apply there as long as the State was implementing its own laws authorizing medical marijuana. That's what the statute says. Well, that wouldn't be a decision implementing laws. That would be a prosecutor deciding I'm not going to enforce that law. Well, generally I agree with that. And the distinction here is Washington has a distinct aspect of its scheme where there's leniency and discretion baked in expressly to these various provisions. With findings that there was confusion and that the legislature wanted to make sure. Note that we have enough of a record to make those findings ourselves. I think even if your arguments prevail, the best that can be said is that additional findings may be necessary. Well, these are legislative findings. I mean, they're in the record. You can look at in our appendix. Findings as to whether there's been compliance in this particular case. So I'm talking about this exercise of discretion to look at whatever was being done and decide, you know what, I'm not going to prosecute here. In the abstract, perhaps that's not enough to trigger 542. In a scheme here in which that kind of decision is intended to happen specifically to make sure people, as the legislature said, they want to make sure patients may fully participate without fear of state criminal prosecution. That's directly from the legislative finding because of this confusion. And so when it's in that context, then that is implementing by making sure that people engage in the conduct that's authorized and are confident to do so. What I'm really contemplating is somebody says, the prosecutor says, you know, medical schmedical, I don't really care. I'm into recreational. So I'm not going to do anything. And at that point, I have a hard time seeing how the appropriations rider, which plainly is tied to medical marijuana, would prevent the Federal Government from at least taking action with regard to nothing that could be, anything that could be clearly outside the realm of medical use. And I suppose if you got far enough out, even within this scheme, perhaps that would be the case here. There's a boundary there. You think the boundary is well outside the limits of this case. Yes. Yes, exactly. And the disputes that have been raised in this case don't, aren't about that. And so I'd like to reserve the remainder of my time. All right. Thank you. Good morning, Your Honor. May it please the Court. Russ Smoot for the United States. Your Honor, I think the bottom line is that this case really comes down to whether or not 542 is applicable in this case or not. And as opposing counsel indicated, as opposing counsel stated, that the United States is holding, is hanging it on one admission of the defendant in pleading to conspiracy to manufacture and distribute 100 or more marijuana plants. But I would submit, Your Honors, that that's not, that misses really the heart of the issue. The heart of the issue is not, yes, I've entered a plea. The heart of the issue is the admissions made within the plea agreement itself, which are in the proposed sealed SCR. Those are the facts. Is that sufficient for us, sitting here as the appellate court, to look to the admissions in the facts in the plea agreement, or do we need to look to specific findings by the district court that those admissions are tantamount to noncompliance with State law? Well, I think both. You can look at both, Your Honor. And this is why I would submit both. Because the court's findings, as the court noted at ER 19, occurred on, were written on February 12, 2015, and then the admission based on the plea admissions were February 24, 2015. I think I meant to say 15 in both of them. So in this case, the defendant, 542 or at 538 at the time, came into effect during the pendency of the prosecution. The defendants filed a motion for dismissal. The motion for dismissal then was addressed by the court. In their motion for dismissal, both parties proffered the facts of the case. The court was able to review the facts that were presented by both parties, as well as the record, and then make the determination based on the plant amount, the total amount of plants, the records seized from the search, as the court indicates, and come to the finding that the evidence, the United States has proffered evidence to demonstrate the defendants were operating a for-profit. According to the United States, the records are plain. So why shouldn't this be a McIntosh situation where we remand for an evidentiary hearing? Well, Your Honor, here's why. And let me, if you can, when we come before the court, we have court, we always bring cases that are like this precedent or like that precedent. In McIntosh, in this case, while it's distinguishable maybe from both cases, both McIntosh and the subsequent case, Kleinman, I think that in these circumstances, especially in consideration of the defendant's stipulation to the facts of his own conduct, that this case is more like Kleinman even though 542 came into effect before the defendant entered his plea, whereas in Kleinman it came into effect between the trial court prosecution and the appeal. And here's why I would say this. In McIntosh, which I'm familiar with because McIntosh was a combined case that also included a case out of the Eastern District of Washington, Canastan was included, combined in that case. In that case, a number of different defendants from the Eastern, I believe, Eastern District of California, Northern District of California, and the Eastern District of Washington filed interlocutory appeals, challenging 542. At the time, which is interesting, same counsel was involved in both cases. Same counsel was involved in the Canastan case, not for this particular defendant, but for the group of defendants, and was also involved in the totality of the Firestack-Harvey-Zucker-Greg case. At that point in time, for some reason, after the district court denied their motion to enjoin, no interlocutory appeal appears to have been sought in this case where it was sought in the other case. What the district court had in this case is it had, unlike Kleinman, where 542 had come out before the actual finality of the district court case, the court did not have the rulings, the interpretation of that, in McIntosh and subsequently Kleinman. So this case is somewhat in a limbo between whether or not 542 came up prior to the finality of the case, but the definition by this court and the interpretation of 542 did not come out until this case was on appeal. That said, this court, the district court at this point, had proffered evidence. It didn't summarily deny the 542. It looked at the proffered evidence, which was the procedure at the time prior to McIntosh, subsequent to the court's decision, but prior to McIntosh and Kleinman, the defendant then submitted, through his plea agreement, factual stipulations defining his own conduct. So this case, there's no need to send this back for, as the court suggests, a McIntosh remand, because all of the evidence not only was proffered prior to McIntosh in the procedure that was done at the time, but the defendant has already made a statement under oath or an oathful statement to the court that these facts are the facts of the case, and I stipulate that these are the facts that can be proven, and those are the facts found within the plea agreement. If I've read the plea agreement more than once, I don't know it nearly as well as you do, but I didn't see anything that punched me in the nose and says this case is over. We've got the issue that was raised before about whether knowingly becomes part of this under Washington state law, and that doesn't seem to be discussed at all in the plea agreement in terms of defendants' knowledge of the boundaries of Washington state law. And the reference in the order to, I don't know how much of this I can make reference, but the commercial part of it, I mean, I see things in the plea agreement that give suggestions of commercial transactions but don't clearly indicate that the party on the other side of the transaction isn't somebody who would qualify under Washington law. Maybe somebody more familiar with Washington law or the facts of this case might see it, but I don't. And so you're telling me we don't need to have an evidentiary hearing because it's all here crystal clear, and I've got to say I'm looking through it and it's not crystal clear to me that we get to the conclusion, the factual conclusion that you think we should. Well, Your Honor, here's what would be the facts of this case in terms of the plea agreement compared to the Washington's medical marijuana statute are such. First, the defendant pled not to growing or manufacturing 15 plants, joining in a collective garden of 45 plants. The defendant did not plead to actual distribution of marijuana. What he pled to was an agreement with other people to manufacture marijuana in an amount in excess of Washington collective garden and individual amounts. Well, in excess based on number, but is there anything there that spoke to the knowingly issue? He said that he participated in a conspiracy to manufacture in excess of 100 marijuana plants. Is there anything there that demonstrates that he knew that action was in violation or in excess of what the Washington statute permitted? First, Your Honor, I would submit that in terms of knowingly in drug statutes First answer the question, is there something there that speaks to the knowingly issue? I know there's an argument as to whether knowingly is part of the Washington scheme, but that's not an argument I'm at yet. I'm trying to say does the plea agreement answer the question, assuming that there is a unknowingly defense or exception for Washington law? The plea agreement does not reference Washington law and any mens rea in reference to Washington law. Second, the number 100 speaks of a conspiracy period I have down as a couple different years. I don't recall when within the year, but an extended period of time. Is there anything in the plea agreement that speaks to the number of plants at any one point in time? Only the plants that were seized both in the first search warrant by the state entities and then the second follow-up search warrant. It references the plants that were seized at the time of the And that number was never greater than 100. It was not. And so it doesn't preclude the possibility that defendant was in compliance with Washington state law, at least with regard to the 45 number, even as he acknowledged in the plea agreement that over this two-year period of time, the sum of plants involved may have exceeded 100. Well, Your Honor, first, if you indicated that he was, you indicate arguably that he's in compliance in terms of the 45 plants, but there were 70 plants relevant to the investigation as it began. So first off... Well, the plea agreement says the government would have evidence that somebody spotted from the air 70 plants. And also that, and I've now lost track of the number, but a short time before there was the carrying away by the local authorities of a number of plants. But I had those numbers up, and I never get to 100. Right. 29 plants were seized initially. 44 plants, I believe. I believe it was 44 or 45 were seized in the second time. I would also... 44. 44. And I would indicate that in terms of the Washington statute, it not only indicates how many plants a person can possess, but it also indicates amount of cannabis being 24 ounces. The sum total of the plants that was seized, the 29 plus the 44, weighed approximately 1,400 pounds. So that's well in excess of the other provisions of the revised code of Washington. But I go back to the point is in terms of a drug conspiracy, obviously there's no overt act required. It's just the simple fact of the agreement. And whether or not the defendants even grew one plant is not relevant to the elements of the charge with which the defendant has pled guilty. That doesn't preclude the possibility that this agreement contemplated doing what they thought Washington state law permitted. And if that were the case, then you come right back to the question of whether this federal enforcement is consistent with the appropriations rider. Well, Your Honor, I would submit that the court's findings are in opposite of that. The court's findings are that this was one based on the United States proffer in the motion practice. So that's why I asked the question initially, what to look at in order to determine the question of whether defendant knowingly violated state law or that he was in fact noncompliant. Now you say look to the plea agreement and the factual basis of the plea agreement. And the factual basis of the agreement in this particular case, as they so often are, otherwise defendants wouldn't sign on to them. It's more couched more in terms of what law enforcement found, what law enforcement observed. They came in, they found this, they saw this, they picked that record, and then some indication of what the record showed. But it doesn't go towards whether defendant was knowingly noncompliant. Then you say, well, then look at that in combination with the district court's finding. And the best that you get in the district court's findings is on the very last page where the district court says essentially according to the United States, this is what the records show. Well, that I don't think gets you much farther than what's in the factual basis of the plea agreement, which says this is what law enforcement took, this is what law enforcement observed, and this is what the record objectively demonstrated. So I'm still not sure why it isn't at a minimum a McIntosh situation where an evidentiary hearing and more specific factual findings would be required. Well, first I would say, Your Honor, and that knowingly in terms of drug statutes has always been a general intent situation. In this case, whether the defendants knew the exact parameters of medical marijuana law or whether they knowingly grew X amount of plants. In this case, I think it's very clear that they knowingly grew the amount of plants that were ultimately, it wasn't a surprise that suddenly here's this marijuana out in the field. They knowingly engaged in the activity of growing the plants. The plant count was well in excess of, and the weight was well in excess of, the Washington law. And then secondly, I would note that the defendant himself indicated at sentencing there's argument that he has indicated, well, he didn't know. Well, he made a specific statement that said, well, about his knowledge of this, of the law on the west side of the state, and how it was not being enforced the same way on the east side of the state. This is a defendant with a prior conviction. This is a defendant that has stated that admitted to conspiracy at the plea and came back and later has later tried to say he was just growing 15 plants with others, but then expressed to the court at sentencing that somehow the law was different on the east side of the state than the west side of the state. So I think all of that comes into play here. Thank you. All right, you're over time. Thank you so much. Thank you, Your Honors. With the limited time I have left, I just want to clarify a few record issues and then just make a couple points. So as to the record, this issue about the amounts versus the number of plants, the weight was 400 pounds. It was of the plants themselves, not the separate usable marijuana, which is what the statute separates out, and those were parallel to the number of plants in terms of legal compliance. Second, there is the only testimony on whether this was knowing or not in terms of the collective issue is at ER 39. It's very clear it wasn't knowing. There's no dispute here. The west versus east is about sort of the practices that are just generally allowed on the sides of the state, nothing to do with it, and really the government has not rebutted that testimony or indicated it wants to try and rebut it. So that resolves that. And then finally, there is actually a distinct issue in addition to the collective garden knowingly piece. There's a segregation issue. There's also no evidence here that my client was involved enough with the entire activity at issue to call any of this into play, and so that would be another issue if there were a remand. Now, getting to that point. Okay, so a couple points on that. This is not Macintosh. Here we have an actual application of the state's unique framework, and it's set up a certain way and it was applied exactly as it's set up. That's why that's the end of the inquiry and there's no need to remand. What is the framework? You get to grow 15 plants. You get to engage in those noncommercial activities. There's a specific limit that applies only if it's violated knowingly. There's discretion in that case to take what is deemed to be excess, but then you have an express right to keep the remainder. That's exactly what happened here. I mean, this framework authorizing all this activity was applied exactly as it's written. You still have the commercial element. I mean, Judge Rice's order, not like an explicit finding you get from an evidentiary but suggests that Washington law was not complied with because of the commercial transactions. But I think because of 542 and it was actually implemented, the law was implemented here on the same evidence we're talking about. I mean, the local officials saw all of that. They made a determination and they applied the law. Well, the local officials saw the number of plants and carried away 29 of them. That doesn't mean that there was awareness that there was what the government alleged was a for-profit commercial operation. No, the very same evidence was obtained by the – it was actually obtained from the state search warrant in the first instance. They saw those records. It was the same. Wasn't there not a second federal search warrant of one of the co-conspirators' houses? Right. That Judge Rice refers to? Right. But the only additional evidence from that search was a forensic review of a computer that found electronic copies of the documents that were already reviewed plus some photographs. I mean, it didn't add anything to the sequence. Maybe back to the situation I talked about before then. If the local prosecutor elects not to prosecute a for-profit commercial operation, which is separate and apart from what Washington law permits for its medical marijuana law, is the federal government obliged to accept the prosecutorial discretion decision of a local prosecutor? And I would say yes, other than in extreme cases. This is not one. That's sort of where we end up. Why not? I mean, if it's not within the medical marijuana law, and the federal writer is very much tied to the medical marijuana law, if you've got transactions that aren't tied to the medical marijuana law, what prevents the federal government from going after those? The word implementation is the key there. I mean, basically the point is it's not just in the abstract. You look at the law and the federal government gets to decide. It's you look at how the state is implementing its laws. That requires a degree of deference like preemption, and that's the purpose. The last, if I could just make one final point on this. There is no need for remand as a secondary point because the government isn't, the burden is on the government to show compliance with 542. They haven't disputed that. They haven't said what they're going to try and prove at the hearing. So to me, there's no need for remand. They haven't done their part to justify that. But at the very least, I would say there needs to be. Except we have a de novo standard of review, and that may be where the need comes from, not necessarily what the prosecutor needs, but what this court needs in order to discharge its duty. Agreed with that. And I would say there's enough here for that and that a remand based on no intent to proffer more evidence wouldn't be warranted here. But at the very least, a remand. Thank you. Thank you very much, counsel, for both sides for your argument. The matter is submitted for decision.
judges: Clifton, Nguyen, Battaglia